Grover, J.
The counsel for the respondents insists that the court had no jurisdiction of the subject-matter of the action, and that for this reason the complaint should be dismissed. Although this question was not raised upon the trial or at the General Term of Supreme Court, and consequently was not passed upon by the General Term, yet, if the ground of the objection is such that it could not have been obviated in the court of original jurisdiction, had it been made there, it may be insisted upon in this court, and, if found valid, the party is entitled to the benefit thereof. (Delafiéld v. The State of Illinois, 2 Hill, 159.) Such is the character of the objection in this case.
To determine whether the Supreme Court had jurisdic *158 tion of the subject-matter, we must ascertain what that is. From the complaint, it appears that the plaintiff prosecutes as the assignee in bankruptcy of William Oressy, and, in that character, claims a recovery from the defendants upon several causes of action set out therein, among which will he found the following: That Cressy, on the 11th October, 1867, was insolvent, to the knowledge of the defendants; and that, within six months prior to Sling his petition in bankruptcy, he made payment and transfers to the defendants of money and property to the amount of. $50,000, with the view of preventing the property coming to the assignee and in fraud of the bankrupt act. Also that Cressy, being insolvent four months before the filing of his petition, to the knowledge of the defendants, who were his creditors, with a view of giving them a preference within that time, procured the seizure of $30,000 worth of logs upon an execution in their favor, and the sale and consignment of the logs to them; also for the alleged conversion, by the defendant, of $50,000 in money,» and the like amount of property owned by Cressy at the time of filing his petition; also to have certain judgments, confessed by Cressy to the defendants, declared invalid, upon the grounds that they had been confessed in part to secure pretended debts due to and liabilities which had not been incurred by the defendants for Cressy; and on- the further ground, that what was really due and incurred had been paid; and also a debt of $50,000, due and owing by the defendants to Cressy, for money received by them for Cressy, for property sold by them as his commission merchants. The appropriate relief, based upon these causes of action, is prayed.
Section 14 of the bankrupt act (14 U. S. Statutes at Large, 522), among other things, provides that, as soon as the assignee is appointed and qualified, the judge—or, where there is no opposing interest, the register—shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all-his deeds, books and papers .relating thereto, and that *159 such assignment shall relate back to the commencement ot said proceedings in bankruptcy; and thereupon, by operation of law, the title to all such property shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any attachment made within four months next preceding the commencement of said proceedings. And further, that all property conveyed by the bankrupt, in fraud of his creditors, all rights in equity, choses in action, etc., all debts due him or any other for his use, and all liens and securities therefor, and all his rights of action for property or estate, real or personal, and for any cause of action against any person arising from contract or from the unlawful taking or detention or of injury to the property of the bankrupt, etc., shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, be at once vested in such assignee, and that he may sue for and recover the said estate, debts and effects. Section 35 of the act provides that if any person, being insolvent or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him oi who is under any liability for him, procures any part of his property to be attached, etc., or makes any payment or pledge, assignment, transfer or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby or by such attachment, having reasonable cause to believe such person, is insolvent, and that such attachment, payment, pledge, assignment or conveyance is made in fraud of the provisions of the act, the same shall be void, arid the assignee may recover the property or its value from the person so receiving it or so to be benefited. The section also makes void other payments and transfers of property, if done within six months next preceding the presentation of the petition, under the circumstances specified, and provides that the assignee may recover such property, or the value thereof, as assets of the bankrupt. The *160 effect of this is entirely clear. It makes void, as to an assignee in bankruptcy, all payments and transfers of property by .the insolvent under the circumstances specified, and vests the title to such property in the assignee, the same as though no such act had been done by the insolvent.
The Supreme Court has, under the Constitution and laws of the State, general jurisdiction of all cases in law and equity. It would follow that, in the absence of anything limiting such jurisdiction, its power to try and determine all rights of property claimed by an assignee in bankruptcy, and all equity- suits in regard to such property or in any way affecting it, could not be doubted. The jurisdiction of the State court over the subject-matter, when that is the right of action upon a contract for the recovery of property, real or personal, does not depend upon the means by which the title was.acquired. An action will lie in this- State upon a contract made in Canada, -or any of the States of the Union, if valid by the law where made. By section 14 of the bankrupt act, all the estate, real and personal, including choses in action, by the adjudication and assignment, becomes absolutely vested in the assignee. Should ejectment be brought by the assignee for the recovery of the possession of land owned by the bankrupt, why should the Supreme Court of the State be deprived of jurisdiction upon the ground that the plaintiff’s title was based upon an act of congress ? Should the assignee sue upon a chose in action, the title to which was acquired by virtue of the bankrupt act and the proceedings had under it, would this deprive the Supreme Court of jurisdiction ? That jurisdiction, we have seen, includes' all cases in law and equity, and clearly cannot at all depend upon the source from which the- rights- were acquired.
But I do not understand the counsel for the respondents as challenging the jurisdiction of the court upon this ground. His position, as I understand it, is that, the Constitution of the United States having vested power of passing bankrupt acts in congress, that body may, in its discretion, confer upon the federal courts exclusive jurisdiction *161 of all matters connected therewith, and that, by the act under consideration, have done so. Assuming, for the argument, that congress might have so enacted, let us see whether, by the act in question, they have so done. Section 1 of the act provides that the several district courts of the United States be and they are hereby constituted courts of bankruptcy, and that they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and they are hereby authorized to hear and adjudicate upon the same according to the provisions of this act. The jurisdiction thus given depends wholly upon the act, and is necessarily exclusive, because independent; there is no jurisdiction in any tribunal over any such proceedings, and no original jurisdiction is given to any other. This includes all proceedings for adjudging any one a bankrupt, thereby vesting title to his property in an assignee appointed pursuant to the act. This appears to have been the intention of this provision, as the act further provides- that the jurisdiction thereby conferred shall extend to. all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy, to the collection of all the assets of the bankrupt, etc. In the absence , of this latter clause it might, well be- doubted' whether the district court would have had jurisdiction- of an. action brought by the assignee for the recovery of a debt due or property belonging to the bankrupt when both parties were citizens of the same State. To remove such doubt was the purpose of the clause, and not at all to-, deprive State courts of jurisdiction of such actions vested in. them by the-laws and Constitutions of the States. Section 2 of the act confers upon the circuit courts, within and for the districts where the proceedings in bankruptcy shall be pending, a-general superintendence and jurisdiction of all cases and questions arising under the act, and, upon bill, petition or other proper process, to hear and détermine the case in a court of equity, and also concurrent jurisdiction with the district courts of the same district of all suits, at law or in equity, brought by the *162 assignee relating to the property of the bankrupt. This concurrent jurisdiction of suits at law and in equity, in suits brought by the assignee, relating to the property of the bankrupt, conferred upon the circuit courts, shows no intention to exclude these cases from the jurisdiction of the State courts. The clause declaring that the circuit courts shall have a general superintendence and jurisdiction of all cases and questions arising under the act was not intended to clothe these courts or the judges thereof with authority to interfere with the judicial action of any other court having jurisdiction, but to authorize them to hear and determine any such questions when brought before them by the parties for adjudication. It follows that the act does not exclude the jurisdiction of the State courts in actions brought by the assignee for the recovery of the estate of the bankrupt.
It is further insisted by the counsel for the appellant that the provisions of section 35 of the act, making void payments made, securities given and transfers of property by an insolvent, with a view of giving preference to any creditor, such creditor having reasonable cause to believe the debtor insolvent, and providing that the assignee may avoid such security and recover the money paid or property transferred as assets of the estate of the bankrupt, create new rights, and that, inasmuch as the act confers jurisdiction upon the district and circuit courts of the United States of actions brought for this purpose, the act gives a remedy for such new rights, and that the law makes such remedy exclusive. It is true that the preferences given by insolvents to creditors, declared void by section 35 of the act, are authorized by the laws of this and most if not all the States where the common law has been adopted, by which an insolvent debtor is permitted to give such preferences among his iona fide creditors as he may choose. Taking from the debtor this right, and conferring upon the assignee the right of recovering, for the benefit of the other creditors, as the act does, the property transferred, in its attempted exercise by the debtor, is conferring upon the other' creditors a new right. This right is given *163 them by the act manifestly upon the theory that the giving of such preferences, under the circumstances forbidden by the act, is a fraud upon the other creditors. Under the laws of the State, creditors could always recover property of their debtor, transferred by him in fraud of their rights, when the transferree is a participant in the fraud. The case, then, is this: The act makes certain transfers by the debtor fraudulent, as to his other creditors, which were not so under the laws of the State; and the position of counsel now under consideration would deprive the State courts of jurisdiction of actions for the recovery of this property, while they would have jurisdiction of actions for the recovery of property which the State law held had been transferred by the debtor to defraud his creditors. The act certainly shows no intention to create any such distinction in the jurisdiction of the State courts, and, if made, it must be sustained entirely upon other grounds.
The counsel cites Dudley v. Mayhew (3 Comst., 9) in support of his position. That was an action commenced in the Court of Chancery to restrain the infringement of a patent right, and the learned judge, in giving the opinion of the court, clearly demonstrates that this was a new right, created by the act, and that the act gave an adequate remedy for its protection, peculiar in many respects, of which the parties could not avail themselves in other courts; and hence the conclusion, that the act intended to make such remedy exclusive, was correct. An examination of the cases cited by the judge shows that the rule is based entirely upon the intention of the legislature, apparent from the act to make the remedy provided for the protection of the new right exclusive. But the act in question not only shows no such intention, but the distinction upon which the jurisdiction would be made to depend would be absurd. If any assumption is to be made, it should be that none such was intended.
The counsel cites Brigham v. Claflin, (31 Wisconsin, 607), where this distinction appears to have been made by the court as the basis of the judgment. The opinion of Oole, J., shows that he thought a State court should not entertain *164 jurisdiction of any action brought by the assignee for the recovery of the property of the bankrupt. I have carefully examined the. reasons given by the learned judge, and am unable to concur therein. If the State courts have jurisdiction, it is not in their discretion whether or not to exercise it. It is their duty to do so, when called upon in .the mode prescribed by law. I apprehend no difficulties, arising from conflicting decisions of the State and federal courts in construing the act. Of such questions, arising upon this or any other act of congress, the jurisdiction of the Supreme Court of the United States is paramount, and it is the duty of all other courts to adopt the decisions of that court in regard to them, irrespective of their own views. The idea of the learned judge, that if the State courts have jurisdiction, suits will be greatly multiplied, is, I think, fallacious. It will require no greater number of actions in the State than in the federal courts to collect the estate of a bankrupt.
The right of recovery of property transferred by- the insolvent, given by the thirty-fifth section, is in no sense a penalty imposed upon the party receiving it. The transfers, and titles based thereon, are thereby made void. Hence the right of recovery. The cases holding that State courts have no jurisdiction of penalties given by acts of congress, have no application to the present question.
The counsel also cites Voorhees v. Frisbee, decided by the Supreme Court of Michigan (7th Albany Law Journal, 69). That was a.shit in equity by the assignee, to set aside a conveyance made by the bankrupt, as being void under the bankrupt act. It was held that the State court had no jurisdiction .of the action. The reasoning upon which the judgment was based was substantially the same as in Brigham v. Claflin (supra).
The jurisdiction of the State court is not based upon the act of congress, but wholly upon the Constitution and laws of the State. The right is given by the.act of congress, and I can see no reason why a right so given may not be protected *165 in a State court in the same way and to the same extent as though the same right was derived from another source.
My conclusion is, that upon principle, the court had jurisdiction. I think the authorities sustain this conclusion. It was so held by the Supreme Court of Massachusetts, under the former bankrupt law, in Ward v. Jenkins (10 Metcalf, 583). Such" actions were prosecuted by assignees to judgment, under the same law, in many of the States, without the jurisdiction being questioned. This was known to congress at the time of the passage of the present act. With this knowledge, had there been any intention to exclude the jurisdiction of the State courts, such intention would have been expressed in clear and unmistakable language. It has been so held, under the present law, by the same court in Stevens v. The Mechanics' Savings Bank (101 Mass., 109) and in Forbes v. Howe (102 id., 428); by the Supreme Court in Indiana, in Hastings v. Fowler (2 Carter, 216), and, in Kentucky, in Brown v. Hall (7 Bush, 66); in Pennsylvania, in Mays v. Manufacturers'’ National Bank (64 Pa., 74), and in other cases. To these, other citations might be added, but the above are sufficient.
This brings us to the merits of the case. In the examination of these, we must apply the rule, well settled in this court, that, when the judgment has been affirmed by, the Supreme Court, every fact found by the referee, in support of which any evidence was given, must be assumed as true by this court, and it must be also assumed that he found such further facts, as are necessary to sustain the judgment, as the evidence given would have authorized. Applying this rule, it must be assumed that the defendants, at the time they received the lumber from Cressy, and at the time of issuing the executions upon the judgments, had no just cause to believe him insolvent, but that, on the contrary, they believed that his property was more than sufficient for the payment of all his debts. This court, cannot look into the evidence further than to ascertain whether any was given tending to show these facts. *166 With the eTidence tending to show the contrary, or its weight, the court has nothing to do. These fasts constituted a defence to the claim of the plaintiff for money paid by Cressy, or for property transferred by him to the defendants. The defendants had a legal right to issue executions upon their judgments against Cressy, if Talid, and haTe his real and personal property sold to satisfy the same pursuant to law. The sale haTing been fairly and legally made by the sheriff,- it cannot be set aside in another action on the ground of the inadequacy of the price at which the property was sold.
The only questions presented, which are renewable by this court, relate to the Talidity of the judgments confessed by Cressy to the defendants, and whether the same had been paid. The Terification of the statement by Cressy, to one of the judgments, was upon information and belief only. This was held insufficient by this court in Ingram v. Robbins (33 N. Y., 409). The defendants in their answer, as amended, sought to haTe the Terification amended. This amendment was adjudged by the referee, and was entirely proper under the proof giTen, if such relief could be giTen in the action. That the Terification was amendable by the Supreme Court, upon motion, was determined by this court in the case last cited. Mitchell v. Van Burén (27 N. Y., 300) is to the same effect. In Union Bank v. Bush (36 N. Y., 631) it was held that the amendment could be obtained by an action, the same as upon motion in the original cause. (See also note to Chichester t. Cundee, 3 Cowen, 39.) I think the amendment properly allowed, if at all necessary, as against the plaintiff.
The judgment, without the amendment, was Talid against Cressy. His personal property had been sold upon the execution before the plaintiff’s title attached. He took the real estate' subject to all Talid incumbrances ; and the judgment was an incumbrance Talid against all except the right of judgment creditors of Cressy to institute proceedings to set it aside. The plaintiff was not a judgment creditor of *167 Cressy, and the bankrupt act nowhere confers upon him the rights of such a creditor.
I have examined the statements upon which the judgments were confessed, and concur in the opinion of the Supreme Court that they must be held sufficient under the later decisions of this court. The judgments were, each in part, confessed to secure the defendants for their notes and other commercial paper, which they agreed thereafter to advance to Cressy for him to use in his business, which the defendants were to provide for at maturity, and which they did in fact advance, and which were used by Cressy prior to the issuing of the executions. The objection is that the defendants, not being liable upon such paper at the time of the confession of the judgments, there was, to this extent, no legal foundation for the judgments, and that to this extent they are void. In Brinkerhoff v. Martin (5 Johns. Chancery) it was held that a judgment might be confessed to secure responsibilities thereafter to be incurred. In Truscott v. King (6 N. Y., 147) it was held that a judgment might be confessed to secure future advances of money, and the cases are fully examined showing for whát purposes this security may be taken. It is obvious that there is no reason for permitting judgments to be taken, to secure future advances of money, that is not equally applicable to permitting them to secure future advances of notes and other commercial paper.
But conceding that judgments confessed for these purposes prior to the Code were valid, the counsel for the appellant insists that the law, in this respect, was changed by its provisions. The Code, section 382, provides that judgments by confession may be entered without action either for money due or to become due, or to secure any person against a contingent liability on behalf of the defendant, or both, in the manner prescribed. This language, declaring the purposes for which judgments may be confessed, is very comprehensive. Honey due, and money to become due, embraces all demands of a pecuniary character. In this *168 case, money would certainly become due from dressy to the defendants, should the latter thereafter advance or loan him money, and just as certainly should the defendants thereafter loan him their notes or other commercial paper which should be used by him, and provided for by the defendants, pursuant to the agreement between them. To secure the payment of this money, a judgment might be confessed. I think that a fair construction of the Code authorizes the confession of judgments for any of the purposes authorized by the then existing law; hut whether so or not, it authorizes such judgments for money then due, or certainly or contingently to become due, and this embraces the present case.
The counsel for the appellant insists that the evidence conclusively proves that the judgments had been fully paid prior to the issuing of the executions thereon. It does prove a .receipt of money by the defendants, for lumber of dressy, sold by them as his commission merchants, more than sufficient for that purpose. Had there been no other application of this money by agreement of the parties, or by their acts, or that of either of them, the law would have applied it upon the oldest debts, and thus have paid and extinguished the judgments. .But the evidence tended to show, and the referee has found, that when the advances of the defendants in money and paper equaled the amount of the judgments, the parties agreed that the defendants should make further advances, and that the money thereafter received by them should be applied to the payment of such advances; that, in pursuance of this agreement, further advances were made by the defendants, to the payment of which the money subsequently received by them was applied, and, so applying it, the sums for which the executions were issued remained due upon the judgments. The fact that no separation of the accounts was made upon the books of the defendants was evidence only tending to show that no such agreement was made. We have already seen that this court is concluded by the finding.
The judgment appealed from must be affirmed.
All concur; Rapallo, J., concurs in result, but expresses *169 no opinion as to the jurisdiction of State courts to set aside preferences, etc., declared void by the bankrupt act. Judgment affirmed.