[No. 20702.   Department One.   December 15, 1927.]

# F. W. CORDES, *Respondent,* v. GUY INVESTMENT COMPANY, *Appellant.*[1]

[1] LANDLORD AND TENANT (64)—REPAIRS AND IMPROVEMENTS—
COVENANT TO REPAIR.  A clause in lease "necessary repairs to
roof . . . are the concern of the lessor," which was as-
sured to be in good condition, is sufficient as a covenant to keep
the roof in good repair.

[2] SAME (84) — INJURIES FROM DEFECTIVE CONDITION — DAMAGES.
Upon breach of the lessor's covenant to keep the roof of a
storage room in good repair, the lessee is entitled to recover its
actual loss, $573, for damaged piano wire, contracted to a pur-
chaser for $600, and which, through leakage, was so damaged
as to be worth but $27.

Cross-appeals from a judgment of the superior court
for King county, Ronald, J., entered January 26, 1927,
upon findings in favor of the plaintiff, in an action in
tort, tried to the court.   Affirmed on both appeals.

*Bronson, Jones & Bronson,* for appellant.

*Moore & Higgins,* for respondent and cross-appel-
lant.

PARKER, J.—The plaintiff, Cordes, seeks recovery of
damages, claimed as the result of the failure of his
landlord, the defendant investment company, to keep
in repair the roof of the building occupied by him as a
tenant of the building, as required by a covenant of the
lease.   Trial upon the merits, in the superior court for
King county sitting without a jury, resulted in findings
and judgment awarding to plaintiff recovery in the
sum of $573.   From this disposition of the case, the
defendant has appealed to this court, and thereafter
the plaintiff cross-appealed to this court, claiming the

[1]Reported in 262 Pac. 131.

amount of the award to be inadequate under the evidence.

The plaintiff, at all times in question, was a dealer in electrical and mechanical machinery in Seattle. On February 16, 1925, the plaintiff leased from the defendant investment company the south half of its building situated on lot 6, block 315, Seattle Tidelands Addition, the space so leased being approximately thirty by one hundred fifty feet in area. The written lease contained, among other stipulations, the following:

"The lessee shall not use said premises for any other purpose than that of a general machinery manufacturing, storage and sales business. . . . Necessary repairs to roof, walls or foundation are the concern of the lessor. . . . It is hereby agreed that lessor will guarantee to lessee the quiet, peaceful and uninterrupted possession of said premises for the full term of this lease."

Soon after the execution of the lease, the plaintiff commenced the occupancy of the leased space, and thereafter carried on his business therein as contemplated by the terms of the lease. About March 10, 1925, the roof of the building commenced to leak and showed signs of being seriously out of repair, the leakage threatening to seriously damage the plaintiff's goods. He then notified defendant's agent, requesting repair of the roof, and obtained a promise of proper repair being made.

Some two weeks later, plaintiff received 1,500 pounds of steel piano wire which he had bought and contracted to sell a customer for six hundred dollars, having received a cash deposit of one hundred dollars on such contracted sale. Soon thereafter, while the wire was stored in the leased space of the building, leakage through the roof so wet and damaged the wire as to seriously damage it to the extent that it became, with-

out fault of the plaintiff, of practically no value, and could be sold for the price of only twenty-seven dollars, rendering it necessary for the contract for the sale of the wire by the plaintiff to be rescinded and his returning to the purchaser the one hundred dollars deposit. The wire, if undamaged, was of the value of at least six hundred dollars. Indeed, its market value was shown to be considerably more than six hundred dollars, but the court awarded to the plaintiff only five hundred and seventy-three dollars, because that was his actual loss, in view of his previous sale contract with his customer. It is this award of which the defendant here complains upon its appeal.

The plaintiff claims further damages by reason of the continued leaking of the roof; claiming that, to safely protect certain of his other goods, he was compelled to rent storage space therefor elsewhere; seeking to have his alleged damage on that account measured by the amount of storage rent he was compelled to pay for storage elsewhere. The refusal of the court to make any additional award to the plaintiff on account of this claimed damage is the basis of the plaintiff's complaint, here made upon his appeal.

[1] Counsel for the defendant invoke the general rule, as stated in Jones on Landlord and Tenant, § 589, that

"Obligation to repair cannot be placed on the landlord without clear and specific language to that effect; such a duty cannot be raised by inference;"

and argue that the lease does not contain language clearly evidencing a covenant on the part of the defendant to keep the roof in repair. It seems to us that the words "necessary repairs to roof . . . are the concern of the lessor," especially when read in the light of the other above quoted stipulations of the lease, do plainly evidence such a covenant. The con-

templated use of the space by the plaintiff was clearly understood and agreed upon, and it was manifestly that use that was guaranteed to be "uninterrupted," meaning, we think, such safely uninterrupted use as contemplated. A further consideration, lending support to this view, is that it appears from the evidence that, in the negotiations leading up to the making of the lease, the defendant's agent assured the plaintiff that the roof was in good condition.

Contention is made in behalf of the defendant that the evidence does not warrant the conclusions that the damage to the wire was caused by the leaking of the roof; that, if that was the cause of the damage, the defendant did not have timely notice of the defect in the roof; and that the damage, if any, was the result of the plaintiff's negligence, in that he could, by proper care, have so placed the wire in the leased space as to cause it to escape such damage. These contentions present only questions of fact, and a careful reading of the evidence convinces us that it does not preponderate against the trial court's findings and conclusions.

[2] Contention is made in behalf of the defendant that, in any event, the plaintiff's measure of damages would be only the difference between the rental value of the space and the amount that value was depreciated by the leaking condition of the roof, as to which there was no evidence. We do not think that the plaintiff was confined to such measure of damages. In *Miller v. Sullivan*, 77 Kan. 252, 94 Pac. 266, 16 L. R. A. (N. S.) 737, we find a well considered case, in substance like the one before us, wherein the holding is clearly opposed to this contention. Our own decision in *Kohne v. White*, 12 Wash. 199, 40 Pac. 794, is in harmony with this conclusion, though the particular question does not seem to have been there very elaborately

argued. We conclude that there was no error in the court's adoption of this measure of damages.

It is contended, in behalf of the plaintiff upon his appeal, that he should have been awarded additional damages, for rent paid by him for necessary storage of certain of his other goods elsewhere because of the continued leaking of the roof. We cannot see that the evidence preponderates in showing such necessity upon his part. This contention presents, as we view it, only a question of fact, as to which we think the evidence does not preponderate against the judgment.

The judgment is affirmed. Both parties having, as appellants, wholly failed, neither will recover costs as against the other incurred in this court.

MACKINTOSH, C. J., MITCHELL, ASKREN, and TOLMAN, JJ., concur.