JACOBS et al. v. BAILEY.

No. 10523.

Court of Civil Appeals of Texas. Galveston.

Feb. 10, 1938.

Rehearing Denied June 23, 1938.

Lockhart, Hughes & Lockhart, of Galveston, for appellants.

Henry W. Flagg, of Galveston, for appellee.

CODY, Justice.

This is a personal injury suit brought by appellee against appellants, owners of the Trust Building in Galveston, for damages resulting from falling down an elevator shaft therein. Appellee will hereinafter be called plaintiff, and appellants defendants, as in the trial court.

The material allegations of the pleading on which plaintiff went to trial are to the effect: That defendants own the Trust Building, and leased offices therein to the United States Government, Department of Engineers, among other tenants; and that plaintiff, employed as a Civil Engineer by the United States Government, had his office, as such employee, in such Building. That on February 18, 1935, about 9:45 P. M., when returning to his office (after having driven one of his assistants home), as the proximate result of certain acts of negligence of defendants, of defendants' agents, etc., he was caused to fall down the elevator shaft. That the lights in the halls of the Building were out, and plaintiff entered the hall on the ground floor and first tried the door of the "North" elevator, but finding the door thereto locked, then tried the door to the "South" elevator, and finding it unlocked, was thereby caused to and did believe that the "South" elevator was in place —it being usual for defendants to leave the elevators for the use of their tenants and particularly for plaintiff's use—and plaintiff stepped through the door into what he supposed was the elevator waiting for use; but the elevator not being so in place, plaintiff fell from the first floor to the basement and was seriously injured. Defendants were charged with negligence proximately causing plaintiff's injuries in the following particulars:

(1) In operating the passenger elevators in the building without first having equipped them with a device that would prevent them being moved when the entrance doors thereto were open, contrary to article 6145a, Vernon's Ann.Civ.St., and article 1661a, Vernon's Ann.Penal Code of the State.

(2) In permitting the elevators in the building, including the "South" elevator, to be used and operated without first being equipped with a safety device that would prevent such elevators being moved from the shaft entrance door thereto, when such door was not closed.

(3) In having failed to keep the "South" elevator in place, after having left the shaft entrance door thereto open, as was usually and customarily done when the elevators were left for the use of the tenants of the building, and particularly for plaintiff, for self-operation by such tenants.

(4) In having left the lights out in the building so that the elevator and its shaft were in darkness, knowing that the tenants, and particularly plaintiff, was going to make use thereof at the time in question.

Plaintiff further alleged that the specified and enumerated acts of negligence of defendants, their agents, etc., were the proximate cause of his injuries.

Defendants answered: By general demurrer. They specially excepted to plaintiff's allegations that they were required by statute to keep safety devices on their elevators to serve the purpose plaintiff alleged, and asked to have said allegations stricken from plaintiff's petition as prejudicial. They answered further by general denial. And by way of special answer pled contributory negligence, and assumed risk, on the part of plaintiff.

To the refusal of the court to sustain their special exceptions, defendants reserved exceptions. And moved for an instructed verdict in their favor, both at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, which motions the court refused, to which defendants duly excepted. Defendants excepted to the court's charge to the jury on various grounds, including the court's refusal to submit an issue on "assumed risk".

The case was submitted to the jury on special issues, of which the following—with omissions of definitions and other matter not considered essential to be reproduced —is a substantial copy:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the elevator in question. was not equipped with a device to prevent its movement from a floor landing while the door to the elevator shaft at said landing was to any extent open?" Answered: "It was not so equipped."

"Special Issue No. 2. Do you find from a preponderance of the evidence that the failure, if any, to have said elevator so equipped was a proximate cause of plaintiff's fall into the elevator shaft and his resulting injuries, if any?" Answered: "Yes."

"Special Issue No. 2–a. Do you find from a preponderance of the evidence that when plaintiff approached the elevator shaft on the occasion in question he found the door to the south elevator partly open?" Answered: "Yes."

"Special Issue No. 2–b. Do you find from a preponderance of the evidence that the fact, if it be a fact, that said door was partly open at the time plaintiff approached the elevator shaft was due to any negligence on the part of defendants, their agents, servants and employees?" Answered: "Yes."

"Special Issue No. 2–c. Do you find from a preponderance of the evidence that such negligence, if any, as inquired about in Special Issue No. 2–b, was a proximate cause of plaintiff's falling into the elevator shaft and his resulting injuries, if any?" Answered: "Yes."

"Special issue No. 3. Do you find from a preponderance of the evidence that in shoving back the door and stepping through same, as testified by plaintiff, plaintiff was guilty of contributory negligence, as that term is hereafter defined?" Answered: "No."

And in answer to special issue No. 4, the jury found damages in the sum of $10,000.

Defendants contend that under the undisputed facts plaintiff was guilty of contributory negligence as a matter of law, and that the court should have instructed a verdict in their favor; also, that the court should have rendered judgment for defendants non obstante veredicto; also, that the rule of assumed risk is not limited to the relationship of master and servant, and that the refusal of the court to submit a special issue thereon was reversible error.

The relevant facts about which there is no dispute are these: Plaintiff was employed by the United States Government as a Civil Engineer, and had under lease a number of offices in defendants' building. On the occasion in question, plaintiff was getting out work which required that he work late at nights, and shortly before the elevator service was to be stopped for the night, quit working for the purpose of driving out to her home a woman assistant who was accompanied by her husband. Plaintiff's office was on the fifth floor of the building; and from that floor the night janitor brought plaintiff and his companions down in an elevator. During the short time plaintiff was away driving his assistant and her husband home, the night janitor turned the lights off in the building, locked it up, and left. Upon his return plaintiff let himself in with a key he had been furnished by the head janitor. From the street lights through the entrance door of the building, plaintiff could see the outline of the elevator shaft,

and rang the bell to call the elevator; when his call was not answered he concluded that the night janitor had gone home. Plaintiff found the entrance door to the "South" elevator on the ground floor was ajar. He opened it wide and stepped in, and reached to turn on the elevator light. As the elevator had been left at the second floor, plaintiff fell down through the shaft, and suffered serious injuries. He did not know there was a switch by which he could have turned the lights of the ground floor on; but supposed them to be controlled only by the master switch on the second floor. Plaintiff testified that he began operating the elevators in the building under these circumstances: That he arrived at work early one morning, and the U. S. weather man, who also had an office in the building, opened the elevator door and plaintiff stepped in with him, and the weather man operated it, carrying them both up to their offices. Later the head janitor of the building taught plaintiff how to operate it. And still later, the head janitor complained to plaintiff that he, plaintiff, had left the elevator light burning in the elevator that had been left at the fifth floor for plaintiff's use. And at that time the head janitor told plaintiff it would be all right for him to use the elevator by operating it himself. One of the owners of the building had the head janitor to furnish plaintiff with a key. Plaintiff also knew that the weather man, whose office was on the top floor, and whose business required him to be at his office in the mornings earlier than a janitor came to work, operated the elevators. And when an elevator was left at the fifth floor for plaintiff's use, the door thereto was sometimes left wide open, sometimes ajar, and sometimes between wide open and ajar.

There was much other evidence not considered necessary to detail.

From Ruling Case Law, Vol. 9, pp. 1258-9, par. 23, defendants quote: "If the elevator door is only partly open, there is no assurance that the place is a safe one to enter, and a person who opens it entirely and passes through when the carriage is not at the floor is generally considered guilty of contributory negligence as a matter of law."

The quoted text is fully supported by authorities, among others, Bremer v. Pleiss, 121 Wis. 61, 98 N.W. 945; Wheeler v. Hotel Stevens Co., 71 Wash. 142, 127 P. 840, Ann. Cas.1914C, 576; Gray v. Levy, 226 Mo. App. 991, 48 S.W.2d 20, at page 24.

■■ However, it seems quite clear that the rule just quoted applies to the ordinary case of persons having no authority to use an elevator except as a passenger. While it is true that the head janitor testified that he had no power to authorize plaintiff to operate the elevators, it was not denied that he invited plaintiff to so use them. The head janitor also testified that the Weather Bureau people operated the elevators without authority from him, as he had no power to authorize such operation. But the evidence showed that the Weather Bureau employees had operated the elevators for more than thirty years. At least one of the owners of the building personally knew of such operation. The reason for permitting such operation seems clear. For the Weather Bureau people frequently had to go to their office to take observations at times when the building was locked, and no janitor was there to serve them. And it would have increased the expense to the owners to have furnished elevator service before the hour when the janitors came on duty, or after the hour when they went off duty. While the testimony of the owners who had charge of the building was that they did not know plaintiff, like the Weather Bureau tenants, was also operating the elevators, there was no denial that they furnished him with a key with which to let himself into the building during hours when janitor service was not available, even as they furnished the Weather Bureau tenants with keys. As we understand the evidence, plaintiff was furnished his key to the building after he had been instructed by the head janitor how to operate the elevators. How it can be said that plaintiff was in any different category with respect to authority to operate the elevators from that of the Weather Bureau employees, we fail to see. His office was on the floor next below that on which the office of the Bureau was located. The necessity for him to be in his office performing services for the Government at hours no janitor service was available was the same as that of the Bureau employees. The natural inference from the evidence is that the head janitor, before the accident, did think that he had the power to authorize plaintiff to use the elevators, and to that end, to suggest to plaintiff that he use them, and to instruct him in their operation. The inference is also natural in plaintiff, knowing of the operation of the elevators by the Bureau people, that the invitation by the head janitor to make use of the elevators by self-operation, was authorized. If defendants

requested an issue on the question of such authority which the court refused to give, they have not assigned such refusal as error. The evidence is certainly sufficient to have supported a finding that the head janitor in requesting plaintiff to operate the elevator was acting within the apparent scope of his authority. Obviously this case cannot be decided on the basis that in undertaking to operate the elevator at the time in question plaintiff was doing something he had no right or authority to do.

■ Defendants recognize, of course, that the question of whether the defense of contributory negligence has been made out is ordinarily one of fact to be determined by the jury. But in the instant case they claim that the evidence of negligence on the part of plaintiff is so strong that as a matter of law the jury were incapacitated to draw therefrom but one conclusion. Citing McNeel v. Texas & N. O. Ry. Co., Tex.Civ. App., 54 S.W.2d 571, 574. The case most nearly in point on the facts that has been cited is that of Daniel v. Kosminsky, 85 S.W. 2d 840, by the El Paso Court of Civil Appeals. But in that case the jury found that the plaintiff was guilty of contributory negligence. Certainly there is no question but that the evidence in that case, or in this case for that matter, was sufficient to sustain the finding that the plaintiff was guilty of contributory negligence that proximately caused his injuries. The appellate court, therefore, was not required to pass on, and did not decide, whether, under the state of facts before it, plaintiff was guilty of contributory negligence as a matter of law. And in one respect the evidence in that case was stronger in favor of holding plaintiff guilty of contributory negligence as a matter of law, than in this case. For there, within the knowledge of plaintiff, there were lights within the corridor which he could have turned on. And in the instant case it is the contention of defendants, not that the preponderance of the evidence shows that plaintiff was guilty of contributory negligence, not merely that the evidence is insufficient to support a finding that plaintiff was not guilty of contributory negligence,

but that it was insufficient to go to the jury so as to require the court to instruct a verdict in favor of defendants. That case is therefore only indirect authority for our holding in this case; though it does seem to us the trial court there was correct in submitting the issue to the jury.

■■ It is reversible error, of course, for the trial court to direct a verdict for a defendant if, disregarding all adverse evidence and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion or inference favorable to plaintiff which might have been drawn from the facts proved, the jury might have found for plaintiff. 41 Tex.Jur., p. 949, sec. 177. We are unable to hold as a matter of law that there was no evidence from which the jury might not have inferred that the plaintiff's conduct, under all the circumstances, was contrary to the standard of an ordinarily prudent person under the same or similar circumstances. Plaintiff had left his office lights burning, indicating, as he supposed, his intention of returning. He found the entrance door to the elevator shaft opened in the same way it had always been left open when an elevator had been left for his use. He had never known of such door being left open except when the elevator was in place opposite the entrance door of the shaft. He believed it was equipped with a device to prevent its movement from a floor landing while the door to the elevator shaft at such landing was open. The leaving of such door open was either an act of negligence on the part of the night janitor, or it was an indication that the elevator was opposite the door. The jury concluded that an ordinarily prudent person would, under the same or similar circumstances, be justified in concluding it was an indication of the elevator being there ready for use, by finding plaintiff not guilty of contributory negligence. And we are unable to say that he was, as a matter of law, guilty of contributory negligence. The judgment is affirmed.

Affirmed.

PLEASANTS, C. J., absent.